UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

                          Plaintiff,

     -against-                          **MEMORANDUM & ORDER**

ARCHIE J. PUGH, JR. and THEODORE        07-cv-02456 (KAM)(VVP)
PUGH, each individually and d/b/a
ARCHIE'S TAX & ACCOUNTING SERVICE,

                          Defendants.

----------------------------------X

**MATSUMOTO**, United States District Judge:

        Plaintiff, the United State of America ("plaintiff" or

"Government") commenced this civil action against *pro se*

defendants Archie J. Pugh, Jr. and Theodore Pugh, individually

and doing business as Archie's Tax and Accounting Service

(collectively, "Pughs" or "defendants"), seeking to enjoin them

from engaging in conduct subject to penalty under the Internal

Revenue Code and from acting as federal tax return preparers.

Presently before this court is the Government's motion for

summary judgment, seeking a permanent injunction pursuant to

§§ 7402(a), 7407, and 7408 of the Internal Revenue Code (26

U.S.C.) ("I.R.C."). For the reasons set forth below, the

Government's motion for summary judgment is granted and the

defendants will be permanently enjoined pursuant to I.R.C.

§§ 7402(a), 7407, and 7408, in accordance with the terms of the

Order of Permanent Injunction, dated June 1, 2010, which is being filed concurrently with this Memorandum & Order.

**BACKGROUND**

## I. Procedural History

The Government filed a complaint against *pro se* defendants Archie J. Pugh, Jr. and Theodore Pugh on June 19, 2007 for falsely marketing and preparing federal income tax returns based on a so-called "claim of right" tax-evasion scheme. (Doc. No. 1, Compl. ¶¶ 1, 7-15.) Defendants failed to appear in this matter and, on November 14, 2007, Judge Nicholas G. Garaufis granted the Government's motion for default judgment and permanently enjoined the defendants from, *inter alia*, marketing tax plans that advise customers to attempt to violate internal revenue laws, assisting others in evading payment of taxes and from acting as federal income tax return preparers pursuant to I.R.C. §§ 7402, 7407, and 7408. *See United States v. Pugh*, No. 07-CV-02456 (NGG)(VVP), 2007 WL 3539435, at *8-9 (E.D.N.Y. Nov. 14, 2007).

On November 28, 2007, Judge Garaufis re-opened the case and vacated the entry of default judgment and the permanent injunction against the defendants.[1] (11/28/07 Oral Order.) Thereafter, the defendants answered the complaint on January 30, 2008. (Doc. No. 15.) The Government subsequently moved for a

---

[1] The record does not reflect why the Order of Default Judgment of Permanent Injunction was vacated and the case was re-opened.

preliminary injunction against the defendants on March 26, 2008.
(Doc. Nos. 21-22.) The unopposed preliminary injunction motion
was granted, and an order of preliminary injunction was entered
on April 2, 2008, preliminarily enjoining the Pughs from, *inter
alia*, marketing tax plans that advise customers to attempt to
violate internal revenue laws, assisting others in evading
payment of taxes and from acting as federal income tax return
preparers pursuant to I.R.C. §§ 7402, 7407, and 7408, upon
findings, *inter alia*, that defendants repeatedly and continually
engaged in conduct subject to penalty under I.R.C. §§ 6694,
6695, and 6700. *See United States v. Pugh*, No. 07-CV-02456
(NGG)(VVP), 2008 WL 926069, at *2-3 (E.D.N.Y. Apr. 2, 2008). On
August 20, 2008, this case was reassigned to the undersigned.
(8/20/08 Doc. Entry.) The Government moved for summary judgment
on June 1, 2009, seeking imposition of a permanent injunction
with the same proscriptions as the preliminary injunction.
(Doc. Nos. 41-52, 57.) Defendants opposed the motion. (Doc.
Nos. 53-56.)

## II. Legal Background

### A. The "Claim of Right" Tax-Evasion Scheme and I.R.C. § 1341

The so-called "claim of right" doctrine at issue in
this case is a discredited tax evasion scheme, which falsely
asserts that neither an individual nor his income is subject to
federal income tax. (Doc. No. 46, Decl. of Lori Dixon ("Dixon

Decl."), Ex. 2, *IRS Updates the "Dirty Dozen" for 2004: Agency Warns of New Scams*.) The proponents of this scheme claim that money earned in exchange for personal labor or services does not constitute taxable income, and therefore, taxpayers are entitled to take a "claim of right" deduction on their federal income tax returns in the amount of compensation earned on their labor, which, in most cases, eliminates a participant's tax liability. (Dixon Decl. ¶ 8.) Advocates of the "claim of right" tax evasion scheme, such as the defendants, assert that these tax benefits are a common law or constitutional right, codified by section 1341 of the Internal Revenue Code. (*Id.*) As will be discussed below, the Pughs market and prepare federal income tax returns for customers based on the frivolous "claim of right" doctrine.

I.R.C. § 1341, however, does not entitle taxpayers to take a deduction in the amount of compensation earned. *Pugh*, 2007 WL 3539435, at *4; *Sumter v. United States*, 61 Fed. Cl. 517, 523-24 (Ct. Fed. Cl. 2004). Instead, the credit in I.R.C. § 1341[2] only applies to those situations where: 1) a taxpayer

---

[2] I.R.C. § 1341, entitled, "Computation of tax where taxpayer restores substantial amount held under claim of right," provides, in relevant part:

    (a) General rule.--If--

            (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

            (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

properly reported income in one year; 2) after the close of that tax year, it is established that taxpayer did not, in fact, have an unrestricted claim of right to that income; and 3) the taxpayer repays all or a portion of that income in a later year. (I.R.C. § 1341; *see also* Dixon Decl. Ex. 3, Rev. Rul. 2004-29 at 2.) If a taxpayer meets all three criteria, he or she will receive a tax credit in the current taxable year, amounting to either the equivalent of a refund for income tax paid in the earlier year or a deduction from income in the year of repayment, whichever is more beneficial to the taxpayer. I.R.C. § 1341. Those espousing the "claim of right" tax evasion scheme, like the Pughs, do not instruct their customers that they would first have to show an overpayment in a previous tax year and return their earned income to their employers before being able to claim a deduction under I.R.C. § 1341.

## B. Universal Rejection of the "Claim of Right" Tax-Evasion Scheme

The Internal Revenue Service ("IRS") has made clear that there is no "claim of right" doctrine under I.R.C. § 1341 or any other statute that allows an individual to take the position espoused by the Pughs that neither the individual nor the individual's income is subject to federal income taxes.

---

(3) the amount of such deduction exceeds $3,000,

then the tax imposed by this chapter for the taxable year shall be the lesser of the following . . .[truncated].

I.R.C. § 1341(a).

(*See, e.g.*, Dixon Decl. Ex. 3, Rev. Rul. 2004-29 at 2.) The IRS has treated the so-called "claim of right" doctrine as simply another variation of the frivolous argument that compensation for personal services is not subject to taxation and has imposed criminal and civil penalties and permanent injunctions on tax preparers and taxpayers who attempt to avoid their tax obligations by taking this position. (Dixon Decl., Ex. 2, *IRS Updates the "Dirty Dozen" for 2004: Agency Warns of New Scams* at 1-2 (The "claim of right" deduction "is based on a complete misinterpretation of the Internal Revenue Code and has no basis in law.") & Ex. 3, Rev. Rul. 2004-29 at 1 ("There is no 'claim of right' doctrine under U.S. law, including the Internal Revenue Code, that permits an individual to take the position that either the individual or that individual's income is not subject to federal income tax.").)

Courts, too, have repeatedly rejected the argument that compensation for personal services is not subject to taxation, and have specifically rejected the so-called "claim of right" doctrine as lacking any basis in law. *See, e.g.*, *Sumter*, 61 Fed. Cl. at 523-24 (holding taxpayer's "claim of right" theory, which she based on I.R.C. § 1341, was without any support in law and her contention that wages are not subject to the federal income tax to be a "specious claim"); *United States v. Saladino*, No. 04-CV-02100, 2005 U.S. Dist. LEXIS 38080, at

*6-11 (C.D. Cal. Jan. 20, 2005) (discussing the frivolous nature of the "claim of right" program); *United States v. Lloyd*, No. 04-CV-00274, 2005 WL 3307281, at *6 (M.D.N.C. Dec. 6, 2005), *aff'd*, 2006 WL 1817074 (4th Cir. 2006) ("The claim of right program is simply yet another variation on the frivolous tax protestor argument that wages are not income."); *see also Connor v. Comm'r of Internal Revenue*, 770 F.2d 17, 20 (2d Cir. 1985) (per curiam) ("Wages are income. The argument that they are not has been rejected so frequently that the very raising of it justifies the imposition of sanctions.") (internal citation omitted)); *Olson v. United States*, 760 F.2d 1003, 1005 (9th Cir. 1985) (per curiam) (rejecting as frivolous taxpayer's contention that wages are not income); *Abdo v. United States Internal Revenue Serv.*, 234 F. Supp. 2d 553, 563 (M.D.N.C. 2002) (finding defendant's tax avoidance argument to be another variation "of the same tired tax protestor 'wages are not income' argument that has long been deemed frivolous . . . [and] has been rejected as many times as it has been asserted"); *Abrams v. Comm'r of Internal Revenue*, 82 T.C. 403, 413 (1984) (rejecting as "frivolous and groundless" taxpayer's argument that his income in the form of wages is not subject to the federal income tax).

## III. Factual Background

The following facts are based upon the Government's Local Rule 56.1 statement, and the supporting declarations and exhibits attached thereto,[3] and upon the defendants' submissions[4] and are undisputed except as noted below.

---

[3] In order to supply the factual predicates for its motion, the Government submits, *inter alia*, the declarations, and accompanying exhibits, of Shauna Henline, the Senior Technical Coordinator for the IRS's Frivolous Return Program, and of Lori Dixon, the IRS Revenue Agent assigned to investigate whether the defendants' conduct was subject to penalty and to an injunction, as well as declarations from several of the defendants' customers and sample fraudulent tax returns prepared and filed by the Pughs.

[4] As required by Local Civil Rule 56.2, along with its motion papers, the Government served defendants with a Notice to *Pro Se* Litigants Who Opposes a Motion For Summary Judgment and copies of Local Civil Rule 56.1 and Fed. R. Civ. P. 56. In opposition to the Government's motion for summary judgment, the defendants submitted a one-page opposition motion accompanied by a Statement of Facts in Support of its Opposition, and declarations by Archie Pugh and by Theodore Pugh. (Doc. Nos. 53-56.) Although the defendants state that they submitted a memorandum of law, declarations of customers and notice to plaintiff in support of their opposition, (Doc. No. 53, Defs.' Opp. Mot. for Summ. J. ("Defs.' Opp.") at 1), no such documents were filed. Further, although the defendants were timely served with a Local Rule 56.2 Notice and the accompanying Local Civil Rule 56.1 and Fed. R. Civ. P. 56, the defendants' statement of facts in opposition is not numbered to correspond to the Government's statement of facts. Despite the failings of the *pro se* defendants' purported Local Civil Rule 56.1 statement, "it is well settled that a *pro se*'s papers are to be read liberally," and the court does so in consideration of defendants' opposition to the instant motion. *McAllister v. New York City Police Dept.*, 49 F. Supp. 2d 688, 693 n.2 (S.D.N.Y. 1999) (concluding that, "to the extent that [the defendants] set[] forth facts based upon personal knowledge in [their] signed briefs, [their] affidavits and . . . Local Civil Rule 56.1 Statement, the court will consider those facts and will not deem admitted contrary facts in the [plaintiff's Local Civil] Rule 56.1 Statement"); *see also Olle v. Columbia Univ.*, 332 F. Supp. 2d 599, 603 (S.D.N.Y. 2004) (considering those facts contained in *pro se* plaintiff's opposition to summary judgment that were based on personal knowledge or otherwise admissible evidence, despite plaintiff's failure to submit a Local Civil Rule 56.1 statement.); *Burke v. Royal Ins. Co.*, 39 F. Supp. 2d 251, 257 (E.D.N.Y. 1999) (construing the merits of defendant's motion for summary judgment against *pro se* plaintiff "in light of the entire record before the Court," despite plaintiff's failure to submit a Local Civil Rule 56.1 statement "or to present factual material in evidentiary form"). The court has considered the defendants' submissions, and concludes that, in light of the entire record before the court, defendants have offered scant cognizable opposition to plaintiff's motion and raise no disputed issues of material fact.

## C. The Defendants[5]

Archie J. Pugh, Jr. ("Archie") is the sole proprietor of Archie's Tax and Accounting Service operated out of 136-17 Thurston Street, Jamaica, New York. (Doc. No. 43, United States Statement of Facts in Support of its Motion for Summary Judgment ("Pl.'s 56.1 Stmt.") ¶ 1; Doc. No. 54, Defendants' Statement of Facts in Support of its Opposition Motion Against Summary Judgment ("Defs.' 56.1") ¶ 1); Doc. No. 55, Decl. of Archie Pugh ("A. Pugh Decl.") ¶¶ 4, 11.) According to Archie, he has worked in the field of tax return preparation and accounting for more than 30 years and received a Certificate of Graduation from the National Tax Training School in 1989. (A. Pugh Decl. ¶¶ 2, 4.)

Archie's brother, Theodore Pugh ("Theodore"), prepares federal income tax returns from the same location. (Pl.'s 56.1 Stmt ¶ 1; Defs.' 56.1 Stmt. ¶ 1; A. Pugh Decl. ¶¶ 5, 11.) According to both Archie and Theodore, Theodore never worked for, was not employed by, nor authored documents in connection with Archie's Tax and Accounting Service. (A. Pugh Decl. ¶ 5; Doc. No. 56, Decl. of Theodore Pugh ("T. Pugh Decl.") ¶ 6.) However, Archie states that he allowed Theodore to prepare tax returns for Theodore's customers on Archie's computer because Theodore did not have the equipment necessary for electronic

---

[5] The court has considered the undisputed evidence proffered by the Government against each defendant individually, and notes where evidence pertains only to one defendant, but not the other.

filing.  (A. Pugh Decl. ¶ 5.)  The Government, however, submits declarations stating that Theodore prepared tax returns for Archie's Tax and Accounting Service.  (Dixon Decl. ¶ 5; Doc. No. 50, Decl. of Madeline Rivera ("Rivera Decl.") ¶ 4.)

Although the exact number of federal income tax returns prepared by the Pughs every year is unknown because, in many cases, they do not sign as the paid preparers, the IRS has identified 680 federal income tax returns between 2001 and 2004 and 712 federal income tax returns from 2007 through March 2009[6] bearing one of the defendants' social security numbers or electronic identification number as paid preparer.[7]  (Dixon Decl. ¶ 6 & n.1.)  According to Archie, he prepared approximately 420 tax returns electronically "as a paid preparer" between 2001 and 2004.  (Defs.' 56.1 ¶ 2; A. Pugh Decl. ¶ 12.)

Both Pughs assert that currently they are no longer acting as federal income tax preparers because of the preliminary injunction entered against them.  (T. Pugh Decl. ¶ 2 (stating he is currently unemployed due to the preliminary injunction); A. Pugh ¶ 10 (stating that, because of the

---

[6] The tax returns prepared in 2009 were prepared in violation of this court's preliminary injunction, entered on April 2, 2008.

[7] Specifically, the IRS has identified, from 2001 to 2004, 245 federal income tax returns prepared by Theodore and 267 prepared by Archie containing their respective social security numbers as the paid preparer.  (Dixon Decl. ¶ 6.)  In addition, Archie prepared 168 returns in 2003 using his electronic identification number, 261 returns in 2007 and 247 in 2008 using his social security number or his electronic identification number.  (*Id.*)  Theodore prepared 111 returns in 2007 using his social security number or his electronic identification number.  (*Id.*)

preliminary injunction entered against him, he has notified his customers that he is out of business as of the tax year 2009).) As of March 6, 2009, however, the Government presents undisputed evidence that Archie prepared 51 federal tax returns in the year 2009 and Theodore prepared 42 federal tax returns in the year 2009, all in violation of this court's April 2, 2008 Preliminary Injunction Order, which enjoined the Pughs from, *inter alia,* acting as federal tax preparers and preparing or filing returns for anyone other than themselves. (Dixon Decl. ¶ 6 & n.1.) In fact, Archie admits to preparing "normal" tax returns that "did not involve any 'claims what so ever [sic]'" in 2008 and 2009, explaining "[i]f the preliminary injunction on 04 02, 2008 [sic] applied to normal tax returns as well, My [sic] children and I would be destitute now and the preparation of this opposition for summary judgment would not be possible." (A. Pugh Decl. ¶ 10.) Archie states, however, that he has notified his customers that he is out of business as of tax year 2009. (*Id.*) Thus, it is undisputed that both Pughs violated the preliminary injunction for at least the first few months of 2009.

### D. The Defendants' "Claim of Right" Promotion

The Government presents undisputed evidence that, from at least 1998, the Pughs have been promoting and preparing returns based on the so-called "claim of right" program. (Dixon Decl. ¶ 7.) Specifically, since April 2003, the IRS has

referred to the IRS Frivolous Return Program ("FRP")[8] 92

frivolous filings of returns and claims prepared by Archie and

Theodore and has identified at least 79 returns prepared by the

Pughs for 45 customers claiming "unrestricted claim of right"

deductions between 1998 and 2005.  (Dixon Decl. ¶ 9 & Ex. 4;

Doc. No. 45, Decl. of Shauna Henline ("Henline Decl.") ¶¶ 6, 8.)

These 79 "claim of right" returns examined by the IRS deduct

over $3.8 million in wage income from the taxpayers' adjusted

gross income and claim over $500,000 in tax refunds.  (Dixon

Decl. ¶ 15 & Ex. 4.)  In some customers' individual tax returns,

the Pughs deducted wage income in amounts as high as $284,421,

$112,732 and $107,465 on the basis of the "claim of right"

scheme.  (Dixon Decl. ¶ 15 & Ex. 4.)

        The Government's undisputed evidence demonstrates that

the Pughs, like other promoters of the "claim of right" program,

falsely advise their customers that it is permissible to exclude

from taxation all compensation for personal services or labor

rendered, and repeatedly prepare income tax returns for

customers deducting the amount their clients receive as wages.

(Dixon Decl. ¶ 8; T. Pugh Decl. ¶ 22; A. Pugh ¶ 9; Defs.' 56.1

¶ 3; Rivera Decl. ¶ 6; Doc. No. 47, Decl. of Joan Williams

("Williams Decl.") ¶¶ 4-5; Doc. No. 48, Decl. of Cheryle Prentis

("Prentis Decl.") ¶ 4.)  The Pughs cite to 26 U.S.C.

---

[8] The FRP is a program that identifies frivolous federal income tax returns
filed with the IRS subject to penalties by Congress.  (Henline Decl. ¶¶ 3-4.)

§ 1341(a)(5)(B) for the proposition that "compensation for personal services actually rendered" by "white citizens" is "immune from taxation" under the "14th Amendment" and disclose this frivolous position on IRS Form 8275, entitled "Disclosure Statements." (Dixon Decl. ¶¶ 7-8 & Exs. 1A-D, 5, 7, 10, 11; Defs.' 56.1 ¶ 3.)

The undisputed evidence further establishes that, although the Pughs prepared the returns at issue, the Pughs did not sign these returns as the paid preparers. (Dixon Decl. ¶¶ 6, 14; Henline Decl. ¶ 7.) Instead, the Pughs have their customers sign the tax returns, and either leave the "Paid Preparer's" signature block blank or type "SELF PREPARED" therein in order to conceal their identity as the preparers. (Henline Decl. ¶¶ 7, 8; Dixon Decl., Exs. 7, 10, 11 ("SELF PREPARED" typed in paid preparer's signature block); Dixon Decl., Exs. 5, 6, 8, 9 (paid preparer's signature block left blank).) The Government proffers undisputed evidence that the Pughs were responsible for preparing the returns in question based on: (1) the defendants' customers' identification of the defendants as the individuals who prepared and filed their tax returns containing "claim of right" deductions, even though the defendants did not sign those returns; and (2) the common patterns identified by the FRP linking the frivolous tax returns to the Pughs. (Henline Decl. ¶ 8.)

First, the Government submits a list of known clients for whom the Pughs prepared tax returns claiming deductions based on the "claim of right" scheme (Dixon Decl. ¶ 14 & Ex. 4), in addition to declarations from six of these clients, namely, Joan Williams, Cheryle Prentis, Cassandra Pannell (listed on IRS records under her married name Cassandra Mosley), Madeline Rivera, Gregory Trammell, Mark Mobley, and questionnaires from clients Mark Mobley and William Lloyd, each of whom identifies either Archie or Theodore Pugh as the paid preparer of their tax returns for tax years 2003 and/or 2004. (*See* Williams Decl. ¶ 3; Prentis Decl. ¶ 3; Doc. No. 49, Decl. of Cassandra Pannell ("Pannell Decl.") ¶ 2; Rivera Decl. ¶ 3; Doc. No. 51, Decl. of Gregory Trammell ("Trammell Decl.") ¶ 3; Doc. No. 52, Decl. of Mark Mobley ("Mobley Decl.") ¶ 3; *see also* Dixon Decl., Exs. 12, 13.) These clients specifically state that one of the defendants prepared their tax returns but did not sign the return as the tax return preparer. (*See, e.g.*, Williams Decl. ¶¶ 6-7 ("[Theodore Pugh] told me to sign the return, which I did, and then he took it to mail. Theodore Pugh did not sign my return as the tax return preparer even though he was the one who prepared my return."); Dixon Decl., Ex. 7 (2003 tax return of Joan Williams, with "self-prepared" typed in signature block); Pannell Decl. ¶ 6 ("After Archie Pugh prepared my federal income tax return, he called me and I came over to his house to sign it

. . . [but he] did not sign my return as the paid preparer. In fact, no one signed as the paid preparer. In previous years, Archie Pugh had put his signature stamp on the federal income tax returns, but he did not do so for my 2003 return."); Prentis Decl. ¶ 5 (Theodore Pugh "told me, 'Don't tell anyone that I did your taxes.' He said that was because the federal government didn't want people to know about the claim he had uncovered."); Dixon Decl., Ex. 10 (2003 tax return of Cheryle Prentis, with "self-prepared" typed in signature block); *see generally* Dixon Decl. ¶ 27 (a)-(e); Trammell Decl. ¶ 4; Mobley Decl. ¶ 4.)

Further, the FRP identified common patterns among tax returns claiming deductions based on the frivolous "claim of right" doctrine, which the Government asserts "made it evident that the 'self-prepared' returns were in fact prepared by the Pughs." (Pl.'s 56.1 Stmt ¶ 17.) For example, on IRS Forms 1040: 1) line 70, which is the line requesting a routing number to directly deposit any refund, contains the words "NO DEPOSIT" and "NO DEPOSIT REQUESTED" in all capital letters; and 2) Schedule A, line 27 contains the words: "UNRESTRICTED CLAIM OF RIGHT" and "SEE FORM 8275" typed in capital letters in the same font. (Henline Decl. ¶ 8; Dixon Decl., Exs. 5-12.) On IRS Form 8275 "Disclosure Statements," attached to the federal income tax returns: 1) the taxpayer's name is printed in irregularly large font; 2) line 1 uses identical language, claiming a deduction

for "Compensation for personal services actually Rendered" with the initial "C" in "Compensation" and the initial "R" in "Rendered" capitalized on each return; and 3) the Part II, "Detailed Explanation" section states, "See part IV for the law authorizing the deduction" and the Part IV, "Explanations (continued from Parts I and/or II)" section contains an enumerated paragraph, labeled (a) through (h), with the following identical formatting and statements:

> (a) The claim is founded upon a common law immunity which rendered any money earned from the right of accession immune from taxation.
> (b) The 14th Amendment extended this right to United States citizens.
> (c) The United States Code defined this immunity as a "white citizen" right for the United States citizens in Title 42, Sec. 1981.
> (d) Treasury regulations (Title 26) stipulate the deduction is a "Claim of Right".
> (e) United States Code Title 26, Section 1341(a)(5)(B) allows this civil right to be claimed in the following manner:
> "or the corresponding provision of prior revenue laws"
> (f) and:
>> "For purposes of paragraph (5)(B), the corresponding provisions of the internal Revenue Code of 1939, shall be chapter 1 of such code".
> (g) The Internal Revenue Code of 1939, chapter 1, Subchapter B, Section 23 entitled "Deduction From Gross Income"
>> Which allows a deduction for "compensation for personal services actually rendered".
> (h) The party claiming this civil right is a United States citizen.

(Dixon Decl., Exs. 1A-D, 5, 7, 10, 11; Henline Decl. ¶ 8.) The Government proffers that "[a]ll of these characteristics match returns either known to have been prepared by the Pughs or later

established to have been prepared by the Pughs." (Pl.'s 56.1 Stmt ¶ 17.) The Government has attached, and the court has examined, the corresponding tax returns for many of the defendants' clients, which exhibit the patterns described above. (*See* Dixon Decl., Exs. 1A-D, 5-11.)

The Government further submits unrebutted evidence that the defendants' preparation of many of these "claim of right" returns was contemporaneous with 2004 and 2005 IRS Revenue Rulings and IRS annual consumer warnings that tax return preparers and taxpayers would face civil and criminal penalties for using or marketing the "claim of right." (Dixon Decl. ¶¶ 12-14, Ex. 2 & 3; Henline Decl. ¶¶ 10-12 ("During the time these warning were issued by the IRS, the Pughs prepared numerous returns based on the frivolous "claim of right" scheme.").)

The Government submits undisputed evidence that the filing of frivolous tax returns has placed a substantial burden on the defendants' customers and on the IRS. First, many of the defendants' clients have been exposed to potential civil and criminal penalties by having the defendants' prepare and file frivolous tax returns on their behalf, and have been forced to pay back to the Government their deficiencies, in addition to penalties, interest, and fees. (Williams Decl. ¶ 11; Prentis Decl. ¶ 7; Trammel Decl. ¶¶ 5-6; Mobley Decl. ¶¶ 5-8; Rivera

¶ 8; *see also* Dixon Decl., Ex. 2.)  Moreover, the Pughs'

frivolous "claim of right" returns have deducted over $3.8

million in wage income from the taxpayers' adjusted gross income

and claimed over $500,000 in bogus tax refunds.  (Dixon Decl.

¶ 15 & Ex. 4.)  The Government has additionally incurred the

burden and expense of investigating the defendants' tax

preparation services, responding to and processing the frivolous

documents that the Pughs have filed or caused to be filed with

the IRS, as well as issuing and then recovering erroneous

refunds.  (Henline Decl. ¶¶ 6, 8, 13-15; Dixon Decl. ¶ 15.)

### E. The Defendants' Opposition to Summary Judgment

In opposition to the Government's motion for summary

judgment, the defendants do not specifically deny the

Government's factual showing, but instead state in a conclusory

fashion that they "did not engage in conduct subject to penalty

under the Internal Revenue Code that would prevent [them] from

preparing federal electronic tax returns, or federal tax returns

as alleged by Plaintiff."  (Defs.' Opp. at 1.)  In direct

contradiction of that statement, Theodore admits in his

declaration that he "did make a statement to tax payers [sic]

involved in filing disclosure returns[9] that there is no Federal

statute that subjects the[ir] earning[s], the portion which

represents compensation for services actually rendered as

---

[9] The defendants appear to use the terms "claim of right" and "returns under disclosure" interchangeably.

taxable" and only ceased "produc[ing] . . . prepar[ing] . . .
[and] assist[ing] in the preparation of returns involving
disclosure" beginning in tax year 2005 "due to the legal
conflicts between [the] IRS and the actual laws by which the IRS
enforce." (T. Pugh Decl. ¶¶ 22-23, 26.) Theodore states,
however, that allegations regarding the preparation of frivolous
tax returns in the years 2006 through 2008 "are absolutely
false." (*Id.* ¶ 24.) He makes no such claim as to frivolous tax
returns prepared in 1998 through 2004. Likewise, Archie admits
to assisting in the preparation of returns for customers "who
requested to take the ['claim of right'] deduction," which were
filed as self-prepared, but says that he was not paid for these
services. (A. Pugh Decl. ¶ 9 ("I did assist in the preparation
of some returns under disclosure but no fee was paid to me for
this.").) Archie states that, in 2008 and 2009, he only
prepared "normal" tax returns, which "did not involve any
'claims what so ever [sic].'" (*Id.* ¶ 10.)

        Although difficult to decipher, the defendants appear
to raise the following arguments: 1) their failure to file or
sign "self-prepared returns" and "returns under disclosure"
somehow absolves them of liability (Defs.' 56.1 Stmt ¶ 2; A.
Pugh Decl. ¶ 9; T. Pugh Decl. ¶ 18 ("That I have never signed or
authored anyone's name to any document which plaintiff has
presented")); (2) they were unaware that the "claim of right"

position was frivolous at the time the "claim of right" returns were "voluntarily filed" (Defs.' 56.1 Stmt ¶ 3 ("At the time the returns under disclosure were filed[,] the defendants were not aware of any actions taken by the IRS cited in previous legal cases as cited by respondent . . . [and] were unaware until 2005 that there were problems with the voluntarily filed returns")); and (3) that the "claim of right" doctrine is legitimate under the law.[10] (Defs.' 56.1 Stmt ¶ 3; A. Pugh Decl. ¶ 9; T. Pugh Decl. ¶¶ 14, 16-17, 19-22.)

In response, the Government argues that the defendants have failed to raise a genuine issue of material fact precluding summary judgment. (*See generally* Doc. No. 57, Pl.'s Reply.) First, the Government argues that, even if defendants never signed or filed a tax return for a customer that included a "claim of right" deduction, defendants are nonetheless liable under the I.R.C., where, as here, the defendants admit to advising clients about and preparing tax returns containing frivolous "claim of right" deductions. (Pl.'s Reply at 2.) The Government emphasizes that the defendants' failure to sign the allegedly "self-prepared" returns illustrates their attempts to

---

[10] The defendants devote what is probably the longest paragraph in their 56.1 statement to arguing that the "claim of right" doctrine is recognized by the Fourteenth Amendment of the United States Constitution and I.R.C. § 1341. (Defs.' 56.1 Stmt ¶ 3 ("The returns under disclosure that were filed were based on a common law immunity derived from British common law which was adopted in the formation of the United States. The idea of compensation for personal services or labor being immune from taxation was incorporated as part of our constitution in which common law immunities were federally protected under article IV Section 2 of the constitution . . .").)

conceal their identity as the preparers of those returns, which is consistent with the Government's position that the Pughs knew the "claim of right" was frivolous, and with the client declarations stating that the Pughs had their clients sign returns prepared by the Pughs as self-prepared. (Pl.'s Reply at 2.)

Second, in response to the defendants' argument that the "claim of right" doctrine is legitimate and that they were unaware that it was a fraudulent claim at the time the returns at issue were filed, the Government argues that the "claim of right" position is so frivolous that the Pughs, as professional income tax return preparers charged with knowledge of the Internal Revenue Code, regulations, and relevant case law, should have known it lacked merit and had been universally rejected by the IRS and the courts. (Pl.'s Reply at 3-4.) Further, the Government argues that the defendants' attempts to conceal their participation in the preparation of fraudulent returns reveal their subjective awareness of the doctrine's frivolity. (Pl.'s Reply at 3-4.) Thus, the Government argues that summary judgment is proper because the Pughs fail to raise a genuine issue of material fact as to whether they engaged in conduct subject to penalty under I.R.C. §§ 6694, 6695, 6700 and 6701 and subject to injunction under I.R.C. §§ 7402(a), 7407, and 7408.

**DISCUSSION**

**I.  Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  In reviewing the record, the district court must assess the evidence in "the light most favorable to the non-moving party," resolve all ambiguities, and "draw all reasonable inferences in its favor." *Am. Cas. Co. of Reading, Pennsylvania v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994) (internal quotation marks and citation omitted); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party must demonstrate that no genuine issue exists as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

If the moving party makes such a showing, the "non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996); *Celotex*, 477 U.S. at 322-23.  An alleged factual dispute between the parties will not by itself defeat a motion for summary judgment, because "the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis

22

in original).  Specifically, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.  *See id*. at 256-57; *Gross v. Nat'l Broad. Co.*, Inc., 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).

"The Court recognizes that it must extend extra consideration to *pro se* [parties]" and that "*pro se* parties are to be given special latitude on summary judgment motions." *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (citations & internal quotation marks omitted); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (A *pro se* party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest.'") (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, proceeding *pro se* does not relieve the non-movant from the usual requirements of summary judgment, *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (holding that a *pro se* party's "bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment" (citation & internal quotation marks omitted)), and Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses. *Celotex Corp.*, 477 U.S. at 325, 327.

Courts regularly grant motions for summary judgment seeking the imposition of a permanent injunction under I.R.C. §§ 7402(a), 7407 and 7408. *See, e.g.*, *United States v. Buddhu*, No. 08-CV-0074, 2009 WL 1346607, at *3-5 (D. Conn. May 12, 2009) (granting summary judgment and ordering a permanent injunction under I.R.C. §§ 7402(a), 7407 and 7408); *United States v. Schulz*, 529 F. Supp. 2d 341, 346-354 (N.D.N.Y. 2007), *aff'd*, 517 F.3d 606 (2d Cir. 2008) (granting summary judgment under I.R.C. § 7408 and permanently enjoining defendant tax preparers from engaging in conduct subject to penalty under I.R.C. §§ 6700 and 6701); *United States v. Prater*, No. 02-CV-2052, 2005 WL 2715401, *1-2 (M.D. Fl. Sept. 23, 2005) (adopting Report and Recommendation, granting summary judgment and permanently enjoining defendants from promoting tax-avoidance schemes based on the meritless position that domestic income is not subject to the federal income tax under I.R.C. §§ 7402(a), 7407 and 7408); *United States v. Saladino*, No. 04-CV-02100, 2005 U.S. Dist. LEXIS 38131, at *2-4 (C.D. Cal. Jan. 20, 2005), *aff'd*, 2006 U.S. App. LEXIS 7881 (9th Cir. Mar. 29, 2006) (granting summary judgment seeking the imposition of a permanent injunction under §§ 7408 and 7402(a), finding defendant failed to raise a genuine issue of material fact as to whether the tax avoidance programs he sold on his website constituted conduct subject to penalty under I.R.C. §§ 6700 or 6701); *United States v. Cohen*, No. C04-

0332P, 2005 WL 1491978, at *6 (W.D. Wash. May 13, 2005)

(granting summary judgment seeking the imposition of a permanent

injunction under I.R.C. §§ 7402 and 7408(a)); *United States v.*

*Raymond*, 78 F. Supp. 2d 856, 857, 884 (E.D. Wis 1990), *aff'd*,

228 F.3d 804 (7th Cir. 2000) (adopting Report and Recommendation

and granting summary judgment under I.R.C. § 7408 permanently

enjoining sales of defendants' "De-taxing America Program").

## II.  Injunctive Relief under I.R.C. § 7407

The Government seeks summary judgment and a permanent

injunction under I.R.C. § 7407 against Archie and Theodore Pugh.

(Doc. No. 44, Pl.'s Mem. in Supp. at 5-13.)  I.R.C. § 7407

authorizes the court to enjoin a tax return preparer from, *inter*

*alia*, engaging in conduct subject to penalty under I.R.C.

§§ 6694 or 6695[11] if the court finds that injunctive relief is

appropriate to prevent the recurrence of such conduct in the

future.  I.R.C. § 7407(b); *see also United States v. Reddy*, 500

F. Supp. 2d 877, 882 (N.D. Ill. 2007) ("To obtain an injunction

under Section 7407, the United States must demonstrate that: (1)

the defendant is an 'income tax return preparer' within the

meaning of 26 U.S.C. § 7701(a)(36); (2) the defendant engaged in

conduct described in 26 U.S.C. § 7407(b)(1) (A)-(D); and (3)

---

[11] The Government additionally argues that the Pughs can also be enjoined from engaging in fraudulent or deceptive conduct which substantially interferes with the proper administration of the internal revenue laws, as proscribed by § 7407(b)(1)(D).  (Pl.'s Mem. in Supp. at 6, 10-11.)  Because the court finds Theodore should be enjoined for engaging in conduct prohibited by I.R.C. §§ 6694 and 6695, the court does not reach this alternate basis of relief.

injunctive relief is appropriate to prevent the recurrence of such conduct.")  Additionally, where the court finds that a tax return preparer is "continually or repeatedly" engaging in conduct subject to penalty under I.R.C. §§ 6694 or 6695 and that an injunction prohibiting such conduct would be insufficient to prevent further interference with the administration of the internal revenue laws, I.R.C. § 7407 authorizes the court to enjoin such person from acting as a tax return preparer.  I.R.C. § 7407(b).

Given that I.R.C. § 7407 expressly authorizes the issuance of an injunction, the traditional equity grounds for injunctive relief need not be proven.  *See, e.g.*, *Henderson v. Burd*, 133 F.2d 515, 517 (2d Cir. 1943) ("Where an injunction is authorized by statute it is enough if the statutory conditions are satisfied."); *see also United States v. Broccolo*, No. 06-CV-2812, 2006 WL 3690648, at *1 (S.D.N.Y. Dec. 13, 2006) ("When an injunction is expressly authorized by statute, the standard preliminary injunction test is not applied. . . . In such cases, courts focus on the 'statutory conditions for injunctive relief.'") (quoting *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975)); *United States v. Gray*, No. 07-CV-42, 2008 WL 907384, at *2 (W.D. Mich. Feb. 29, 2008) ("The traditional equitable requirements for injunctive relief need not be satisfied when the Internal Revenue Code specifically and

expressly authorizes such relief, as [I.R.C.] § 7407 does here.")

## A. Whether Defendants Acted as Tax Return Preparers under I.R.C. § 7701(a)(36)(A)

The provisions of I.R.C. § 6694, 6695 and 7407 apply to any person who is "a tax return preparer."  I.R.C. §§ 6694, 6695, 7407(a).  I.R.C. § 7701(a)(36)(A), in turn, "provides that, in general, an income tax return preparer means any person who 1) prepared; 2) for compensation; 3) any return of tax imposed by subtitle A of the Internal Revenue Code.[12]"  *Bui v. United States ex rel. I.R.S.*, No. C00-939R, 2001 WL 1244754, at *1 (W.D. Wash. Sept. 19, 2001); *see also* I.R.C. § 7707(a)(36)(A) (defining an "income tax return preparer" as "any person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return of tax . . . or any claim for refund of tax imposed . . .")  The "preparation of a substantial portion of a return or claim for refund shall be treated as if it were the preparation of such return or claim for refund."  I.R.C. § 7701(a)(36)(A).  By contrast, a "'person who prepares a return or claim for refund with no explicit or implicit agreement for compensation is not a preparer.'"  *Bui*, 2001 WL 1244754, at *4 (quoting 26 C.F.R. § 301.7701-15(a)(4)[13]).  Additionally, persons who, *inter alia*, merely furnish typing,

---

[12] There is no dispute that the tax returns at issue here are returns of tax imposed by subtitle A of the Internal Revenue Code.

[13] This section has been renumbered as 26 C.F.R. § 301.7701-15(f)(xii).

reproducing, or other mechanical assistance, prepare a return or claim for refund of the employer by whom he is regularly and continuously employed, prepare a return or claim for refund for any person as a fiduciary, or prepare a claim for refund for a taxpayer in response to a notice of deficiency issued to such taxpayer are not considered to be preparers under the statute. I.R.C. § 7701(a)(36)(B)(i).

Based on the undisputed evidence in the record, the court finds that the Pughs prepared all or a substantial portion of the fraudulent tax returns at issue. Although the Pughs state that they did not sign "returns under disclosure" (Defs.' 56.1 ¶ 2; *see also* T. Pugh Decl. ¶ 18), they admit that they rendered advice about "claim of right" deductions and were responsible for preparing or assisting in the preparation of "returns under disclosure." (A. Pugh Decl. ¶ 9; T. Pugh Decl. ¶ 22-23.) Indeed, both the IRS investigation and the declarations of the Pughs' former clients confirm that both Archie and Theodore prepared the entire tax returns understating their customers' tax liability under the "claim of right" theory, but did not sign those returns as the paid preparers. (*See, e.g.*, Williams Decl. ¶¶ 6-8; Pannell Decl. ¶ 6.) Moreover, the Pughs each admit that they provided advice about "claim of right" deductions, which is directly relevant to the determination of the existence, characterization, and amount of

an entry on a claim for refund. *See* 26 C.F.R. § 301.7701-15(b)(3)(i) ("A person who renders tax advice on a position that is directly relevant to the determination of the existence, characterization, or amount of an entry on a return or claim for refund will be regarded as having prepared that entry."). Thus, the court finds that the Pughs prepared all or a substantial portion of the returns at issue.

The next issue is whether the Pughs were compensated for their services. The Government has presented undisputed evidence that Theodore was compensated for his preparation of the "claim of right" tax returns. (*See* Williams Decl. ¶¶ 5, 8 (Theodore "assured me the claim [of right] was legitimate[,] . . . charged me $500 to prepare each of my income tax returns . . . and insisted I pay in cash."); Dixon Decl., Ex. 12, Mobley Questionnaire (Theodore charged a $75.00 fee for the preparation of "claim of right" tax returns); Dixon Decl., Ex. 13, Lloyd Questionnaire (Theodore charged a $500 fee for the preparation of "claim of right" tax returns).) Theodore does not dispute that he was compensated for his preparation of the returns at issue. He only asserts that "[a]ny returns prepared involving disclosure were never paid to or for services obtained by or through Archie's Tax and Accounting Service," the company Theodore denies being employed by or preparing tax returns in connection with. (T. Pugh Decl. ¶¶ 6, 7; *see also* A. Pugh Decl.

¶ 5.)  Thus, the court finds that Theodore was compensated for preparing the fraudulent "claim of right" tax returns, and the provisions of I.R.C. §§ 6694, 6695, and 7407 therefore apply to him.  *See, e.g.*, *Bui*, 2001 WL 1244754, at *4 (finding defendant was paid preparer where, *inter alia*, the undisputed facts showed that defendant personally collected payment from numerous clients for the returns at issue and those clients had an express obligation to pay the business for which defendant was listed as sole proprietor.)

On the other hand, Archie admits to being a "paid preparer" generally, and assisting in the preparation of "self-prepared" returns for customers "who requested to take the ['claim of right'] deduction."  (Defs.' 56.1 ¶¶ 1, 2; A. Pugh Decl. ¶¶ 2, 4, 9, 11, 12.)  Yet, he specifically denies being paid a fee for his services in connection with these "claim of right" returns.  (A. Pugh Decl. ¶ 9 ("I did assist in the preparation of some returns under disclosure but no fee was paid to me for this.").)

Archie's conclusory denial of receiving compensation for his assistance in the preparation of *only* fraudulent tax returns would be insufficient to create a disputed issue of material fact as to whether Archie is considered a tax return preparer within the meaning of I.R.C. § 7701(a)(36).  Archie has held himself out to the public as a professional tax preparer

doing business under the name Archie's Tax and Accounting
Service, a commercial business which prepares federal income tax
returns in exchange for compensation and of which he is sole
proprietor, and reports income from Archie's Tax and Accounting
Service on Schedule C of his federal income tax returns. (Dixon
Decl. ¶ 5; Pl.'s 56.1 ¶ 1; Defs.' 56.1 ¶ 1; A. Pugh Decl. ¶¶ 4,
11, 12.) Archie's clients have submitted declarations stating
that they utilized his tax preparation business services, and he
has admitted that he was paid for preparing "normal" returns in
his capacity as a commercial preparer. (Pannell Decl. ¶ 2;
Rivera Decl. ¶¶ 3-5 ("Archie Pugh told me that he had prepared
hundreds of returns and had been in business for many years.
Because of this, and because he had been recommended by a
friend, I trusted him."); Defs.' 56.1 ¶ 2; A. Pugh Decl. ¶¶ 2,
4, 9, 11, 12; Dixon Decl. ¶¶ 5-7.); *see also* Jean M. Radler,
J.D., Annotation, *Who is an "Income Tax Return Preparer" Under
26 U.S.C.A § 7701(a)(36)?*, 132 A.L.R. Fed. 265 (1996) ("The
definition of an income tax return preparer in 26 U.S.C.A.
§ 7701(a)(36) was intended to limit application of and penalty
provisions within the statute to professional and commercial
preparers, and to exclude those preparing returns for employers,
friends, and relatives."). The Government, however, has failed
to provide any evidence that either Archie or Archie's Tax and
Accounting Service was paid for the preparation of the

31

fraudulent tax returns, for example, by sworn statements from Archie's clients stating that Archie was paid for preparing their tax returns.  Further, because there is a disputed issue of fact as to whether Theodore was employed by or received funds in connection with Archie's Tax and Accounting Service, the fees paid to Theodore for the preparation of the fraudulent tax returns cannot be imputed to Archie or to his company.  *See, e.g.*, *Reddy*, 500 F. Supp. 2d at 882-83 (finding defendant husband, who admitted to preparing income tax returns for his wife's tax return business, but denied receiving compensation for his services, to be an "income tax preparer" under I.R.C. § 7701(a)(36) because he was indirectly compensated by generating work for his wife's business.)  In light of the fact that there is an alternate basis to permanently enjoin Archie from being a tax return preparer under I.R.C. § 7402(a), as will be discussed, *infra*, the court declines to reach whether Archie acted as a "tax return preparer" subject to an injunction under I.R.C. § 7407.  Although the court declines to reach this issue, because many of Archie's acts described in the context of I.R.C. §§ 6694, 6695, and 7407 are relevant to his conduct in relation to I.R.C. §§ 6700, 6701, 7408, and 7402(a), the court will discuss Archie's conduct, in addition to Theodore's, in the remainder of this section.

**B. Conduct Subject to Penalty Under I.R.C. § 6694**

At all relevant times, a tax return preparer violated I.R.C. § 6694 by either: (1) negligently understating a customer's tax liability due to unrealistic positions, I.R.C. § 6694(a); or (2) willfully attempting to understate tax liability on a return or claim or any reckless or intentional disregard of rules or regulations.  I.R.C. § 6694(b).[14]

### 1. Understatement Due to Unrealistic Position under I.R.C. § 6694(a)

Under I.R.C. § 6694(a), a tax return preparer is subject to penalty where: (1) the return contains an understatement of liability; (2) that understatement is "due to a position for which there was not a realistic possibility of being sustained on its merits"; and (3) the preparer knew or reasonably should have known that the position was either frivolous or was not disclosed pursuant to I.R.C. § 6662(d)(2)(B)(ii).  I.R.C. § 6694(a).  Here, there is no genuine issue that the elements of I.R.C. § 6694(a) are met.

---

[14] I.R.C. § 6694 was amended by the Small Business and Work Opportunity Tax Act of 2007, P.L. 110-28, Title VIII, § 8246(a)(2)(F)(i), (b), effective for returns prepared after May 25, 2007 and again by the Tax Extenders and Alternative Minimum Tax Relief Act of 2008, P.L. 110-343, Div. C, Title V, § 506(a), effective for returns prepared after October 3, 2008.  As the Pughs are being sued for preparing returns prior to May 25, 2007, "the government relies only on the penalty standards in effect for returns prepared on or before that date."  (Pl.'s Mem. in Supp. at 7 n.1.)  The Government further claims that the Pughs' conduct would also be subject to penalty under the amended § 6694(a), which subjects a tax return preparer to a penalty for understatements of taxpayer liability due to an "unreasonable position." (*Id.*)

First, the tax returns prepared by the Pughs contained understatements of liabilities. The Government has submitted uncontroverted evidence that the Pughs deducted wage and salary income from the adjusted gross income of at least 45 customers on 79 tax returns between 1998 and 2005, totaling over $3.8 million in fraudulent deductions and over $500,000 in bogus refund claims on the basis of the discredited "claim of right" doctrine. (Dixon Decl. ¶¶ 9, 15; Henline Decl. ¶¶ 6, 10.) Because the Pughs understated their clients' liabilities and falsely claimed tax refunds to which their clients are not entitled, many of their clients have been audited and forced to pay back their deficiencies, in addition to penalties, interest, and fees. (*See, e.g.*, Williams Decl. ¶ 11; Prentis Decl. ¶ 7; Trammel Decl. ¶ 5-6; Mobley Decl. ¶¶ 5-8; Rivera ¶ 8.)

Secondly, the defendants advanced unrealistic positions by claiming deductions based on the frivolous "claim of right" scheme, a position that has never had any realistic possibility of being sustained on the merits, and the defendants either knew or should have known that the position was frivolous. (*See, e.g.*, Rivera Decl. ¶ 6 (Archie Pugh "promised me that I would get back the taxes that were taken out of my check. He told me that IRS taxes were illegal and promised I would get a refund. . . . He told me it was legal and that it was my right to get my money."); Williams Decl. ¶ 4 (Theodore

Pugh "said that not many people knew about this claim, but that it was my right to claim the taxes that had been taken from my paycheck."); Prentis Decl. ¶ 4 (Theodore Pugh "told me that the claim on my return was legal . . . [and] explained to me that because of an amendment . . . it was my right as a citizen to get a tax refund."); Pannell Decl. ¶ 5 ("Archie told me that he had a 'form' that would help me resolve the issue of owing so much money . . . he told me he had used it for several other customers, and this reassured me it was legitimate.").)  As discussed, *supra*, neither I.R.C. § 1341 nor the Fourteenth Amendment to the United States Constitution, nor any other authority, provides support for the "claim of right" position promoted by the Pughs.  *See, e.g.*, I.R.C. § 61 (stating that "gross income means all income from whatever source derived, including . . . [c]ompensation for services"); *Saladino*, 2005 U.S. Dist. LEXIS 38080, at *6-11 (discussing the frivolous nature of the "claim of right" program).  Federal courts, including the Second Circuit, have repeatedly rejected the proposition that an individual's income from W-2 wages or compensation for services rendered is immune from federal income taxation, and the Pughs have not identified any federal court that has held to the contrary.  *See, e.g.*, *Schiff v. United States*, 919 F.2d 830, 834 (2d Cir. 1990) ("the average citizen knows that the payment of income taxes is legally required");

*Connor*, 770 F.2d at 20 (stating that the argument that wages are not income warrants the imposition of sanctions); *see also United States v. Romero*, 640 F.2d 1014, 1016 (9th Cir. 1981) ("Compensation for labor or services, paid in the form of wages or salary, has been universally, [sic] held by the courts of this republic to be income, subject to the income tax laws currently applicable."); *Gray*, 2008 WL 907384, at *2 & n.2 (collecting cases from each circuit, decided between 1981 and 2007, which hold that the argument that wages are not taxable income is frivolous).

Third, as experienced professional income tax returns preparers, defendants knew or should have known that the "claim of right" position was frivolous and did not have any realistic possibility of being sustained on the merits. *See Abdo*, 234 F. Supp. 2d at 564 ("The law attributes to [self-proclaimed tax expert defendant] a basic knowledge of the law such that [he] should reasonably be aware that [his] personal belief that paying taxes is a voluntary activity does not represent the current state of the law.") (internal quotation marks and citation omitted); *United States v. Venie*, 691 F. Supp. 834, 839 (M.D. Pa. 1988) ("In holding himself out to the public as a tax return preparer, [defendant] is presumed to be familiar with the Internal Revenue Code as well as the regulations and case law regarding the Code."). Therefore, the Government has proffered

evidence sufficient to show by a preponderance of the evidence that Theodore, as a tax return preparer, engaged in conduct subject to penalty under I.R.C. § 6694(a).

### 2. Understatement Due to Willful or Reckless Conduct under I.R.C. § 6694(b)

Further, the unrefuted evidence proffered by the Government demonstrates that the Pughs deducted the amount received as wages from their clients' adjusted gross income under the frivolous "claim of right" program and those understatements of tax liability were either willful or reckless. I.R.C. § 6694(b). First, as the Government argues, a review of case law, IRS revenue rulings and IRS consumer rulings would have revealed that the "claim of right" doctrine was frivolous, and therefore, "[o]nly reckless disregard for the internal revenue laws can explain the Pughs' failure to discover the meritless nature of the 'claim of right' doctrine." (Pl.'s Mem. in Supp. at 8-9.)

Moreover, the evidence reveals that the Pughs were subjectively aware that the "claim of right" tax returns they prepared were frivolous. In fact, the defendants' clients informed them that the "claim of right" tax returns were being audited by the IRS. In response, the Pughs either ignored their clients' complaints or encouraged their clients to fight the IRS. (*See, e.g.*, Mobley Decl. ¶ 6 ("I contacted Theodore Pugh after I received the letter from the IRS, and told him what was

happening.  Theodore Pugh told me not to pay anything.  He said

that the refund was money due to me, and that since it was my

money, I didn't need to pay it back.  He said he would file some

paperwork on my behalf."); Williams Decl. ¶ 9 ("After the IRS

contacted me in 2004 about my 2003 income tax return, I

contacted Theodore Pugh.  At first, he told me not to worry and

that the IRS wouldn't do anything because he would send then a

letter explaining the deduction.  Then, he started to ignore my

phone calls."); Prentis Decl. ¶ 6 ("After the IRS contacted me

about my return, Theodore Pugh encouraged me to fight.  He said

we could find a lawyer to represent me and challenge the IRS in

court.  Pugh told me they had won cases on this issue.");

Pannell Decl. ¶ 7 ("When I learned my federal income tax return

was being audited by the IRS, I called Archie Pugh.  I don't

remember ever getting a call back.").)  One of Theodore's

clients, William Lloyd, challenged in Tax Court an IRS Notice of

Deficiency related to his 2003 tax return, which was prepared by

Theodore Pugh and claimed a deduction equal to the amount of

wages reported based on an "unrestricted claim of right."  Dixon

Decl. ¶ 29 & Ex. 13, Lloyd Questionnaire & Ex. 14, *Lloyd v.

Cmm'r of Internal Revenue*, No. 12722-05 (Oct. 6, 2005)).  The

court, noting that the return appeared to have been prepared by

the petitioner, and not by a paid preparer, because it was only

signed by the petitioner, found the attempt to "write-off

[petitioner's] wages" to be "frivolous and patently improper." (Dixon Decl., Ex. 14.)[15]

The Government's evidence also shows that, at the same time the Pughs were encouraging their clients to fight the IRS, the Pughs were taking steps to ensure the IRS could not trace the tax returns with "claim of right" deductions to them. Importantly, as discussed *supra*, although the Pughs admitted they prepared tax returns including "claim of right" deductions, they did not sign the returns as the paid preparers and in some instances, typed "self-prepared" on the returns. Additionally, Theodore instructed one of his clients not to "tell anyone that I did your taxes" and that "if the IRS asked," the client should tell them she "had learned about the claim on the internet." (Prentis Decl. ¶ 5; *see also* Williams Decl. ¶ 8 (stating that Theodore Pugh did not give her a receipt and insisted she pay him in cash for her tax return).) Finally, although Archie admittedly helped prepare tax returns with "claim of right" deductions on behalf of his clients, he never claimed this deduction on his personal tax returns.[16] (Dixon Decl. ¶ 10.)

---

[15] The Pughs' awareness that their clients' "claim of right" deductions were being pursued by the IRS provides additional support for the conclusion that the Pughs knew or should have know that their argument that wages are not federally taxable income had no realistic possibility of being sustained on the merits, subject to penalty under I.R.C. § 6694(a). *See, e.g.*, *Gray*, 2008 WL 907384, at *2 (finding tax preparer was subject to penalty under § 6694(a) where tax preparers knew that his customers had received IRS letters that rejected the returns he prepared as frivolous).

[16] The Government does not provide evidence as to whether Theodore took a "claim of right" deduction on his personal income tax returns.

Thus, the Pughs' conclusory denial that they were "unaware until 2005 that there were problems with the voluntarily filed returns" is insufficient to raise a material issue of disputed fact as to the defendants' conduct, especially in light of their current insistence that the "claim of right" doctrine is legally correct. (Defs.' 56.1 Stmt ¶ 3.) The court finds that there is no issue of disputed material fact that Theodore, as a tax return preparer, repeatedly and continually engaged in conduct subject to penalty under I.R.C. § 6694, understating his customers' income tax liabilities by negligently and/or willfully claiming frivolous deductions based upon the discredited "claim of right" doctrine, which advances the meritless position that an individual's wage earnings and compensation for services rendered are not subject to federal income taxation.

## C. Conduct Subject to Penalty Under I.R.C. § 6695

I.R.C. § 6695(b) and (c) penalize a tax return preparer who fails to sign a return or to furnish an identifying number that would secure his proper identification as the tax return preparer. *See* I.R.C. §§ 6695(b)-(c); I.R.C. § 6109(a)(4). Here, the undisputed evidence demonstrates, as the Pughs admit, that the defendants prepared or assisted in the preparation of tax returns containing "claim of right" deductions, but neither of the Pughs signed those tax returns as

the preparer nor listed his identifying number on those returns.
In fact, in some cases, the Pughs even typed "self-prepared"
into the paid preparer's signature block. (*See* Henline Decl.
¶ 8; Dixon Decl., Exs. 7, 10, 11.) The defendants have
presented no evidence that their failure to affix their
signatures or identifying numbers was due to reasonable cause
and not due to willful neglect. As a tax return preparer,
Theodore's failure to sign many of the tax returns he prepared
for customers as the paid preparer or to furnish other
identifying information as required by federal regulations
subjects him to penalty under I.R.C. § 6695(b) and (c).

### D. Injunctive Relief under I.R.C. § 7407

I.R.C. § 7407 authorizes the court to enjoin a tax
return preparer from preparing federal income tax returns where
the court finds that such person is "continually or repeatedly"
engaging in conduct subject to penalty under I.R.C. §§ 6694 or
6695 and that an injunction prohibiting such conduct would be
insufficient to prevent further interference with the
administration of the internal revenue laws. I.R.C. § 7407(b).
As discussed, *supra*, Theodore,[17] as a paid tax return preparer,
has continually and repeatedly engaged in conduct subject to
penalty under both I.R.C. §§ 6694 and 6695 by preparing income

---

[17] As noted, *supra*, although the court ultimately only enjoins Theodore, as a
paid tax return preparer, under I.R.C. § 7407, Archie's conduct is also
discussed herein.

tax returns for customers claiming frivolous deductions for an

"unrestricted claim of right," by failing to sign or to furnish

identifying numbers on those returns, and by advising his

clients to mislead the IRS regarding his role as the tax

preparer. Based on the undisputed evidence before this court,

it appears that a narrow injunction would not prevent Theodore

from repeating such conduct in the future.

The Second Circuit has provided several factors to be

considered in determining whether a permanent injunction is

appropriate. *See S.E.C. v. Manor Nursing Ctrs., Inc.*, 458 F.2d

1082, 1100 (2d Cir. 1972) ("The critical question for a district

court in deciding whether to issue a permanent injunction in

view of past violations is whether there is a reasonable

likelihood that the wrong will be repeated."). "'Factors to be

considered in assessing the probability of future infractions

include: (1) the degree of scienter involved; (2) the isolated or

recurring nature of the fraudulent activity; (3) the defendant's

appreciation of his wrongdoing; and (4) the defendant's

opportunities to commit future violations.'" *Buddhu*, 2009 WL

1346607, at *4 (quoting *S.E.C. v. Softpoint, Inc.*, 958 F. Supp.

846, 867 (S.D.N.Y. 1997)); *see also United States v. Webb*, No.

06-CV-5317, 2007 WL 397041, at *2 (E.D.N.Y. Feb. 1, 2007)

(applying the same factors in the context of a preliminary

injunction under I.R.C. § 7407); *Broccolo*, 2006 WL 3690648, at

*3 (same).  These factors militate strongly in favor of granting

permanent injunctive relief in this case.

First, with respect to scienter, as detailed above,

the Pughs have reason to know that their activities are illegal

and, in fact, have engaged in a course of conduct to conceal

their fraud.  For example, Theodore insisted on payment in cash,

refused to provide receipts, and instructed his customers to lie

to the IRS if asked who prepared their tax returns.

Furthermore, both Pughs typed "self-prepared" on some of the

fraudulent returns they prepared.  (Dixon Decl., Exs. 7, 10,

11.)  The Government has provided evidence of the resources it

has expended investigating the frivolous returns prepared by the

Pughs.  (Henline Decl. ¶¶ 6-9, 13-15.)

Second, the fraudulent activity has been pervasive and

ongoing.  The Government presents evidence that the Pughs have

been preparing fraudulent income tax returns between 1998 and

2005, and that a significant portion of defendants' return

preparation business during that time involved preparation of

fraudulent returns that unquestionably interfere with the

administration of the internal revenue laws.  (Dixon Decl.

¶¶ 14-15 & Ex. 4 (partial list of client returns prepared by the

Pughs, calculating, *inter alia*, more than $3.8 million of wage

income deducted from the adjusted gross income under the "claim

of right" scheme).)  Moreover, the Pughs' fraudulent returns are

not limited to misuse of a single IRS form, or a single factual misrepresentation. Rather, the Pughs have falsified Form 1040, Form 8275, and Schedule A on their clients' returns, and, as described above, have taken steps to conceal their association with those falsified forms.

Third, regarding the defendants' appreciation of their wrongdoing, the undisputed evidence demonstrates that the Pughs were aware of the wrongful nature of their conduct, as evidenced by their failure to sign the fraudulent "claim of right" returns they prepare, their attempts to conceal their involvement in preparing such returns, and Archie's failure to request "claim of right" deductions on his own personal tax returns. Moreover, the Pughs have persisted in preparing fraudulent returns for their clients, even after being informed by their clients that their "claim of right" tax returns were being audited and disallowed by the IRS. (*See, e.g.*, Mobley Decl. ¶ 6; Williams Decl. ¶ 9; Prentis Decl. ¶ 6; Pannell Decl. ¶ 7.) As the defendants' Opposition and the client declarations demonstrate, the Pughs refuse to recognize that the IRS and courts have categorically rejected the "claim of right" doctrine, and instead continue to insist that taxpayers' wages are not subject to the federal income tax. (*See, e.g.*, Defs.' 56.1 Stmt ¶ 3; A. Pugh Decl. ¶ 9; T. Pugh Decl. ¶¶ 16, 17, 19-21.) Theodore has even encouraged his clients to contest the IRS audits. (Prentis

Decl. ¶ 6; Mobley Decl. ¶ 6.)  As the Government argues, "[i]t is unrealistic to expect an individual who has advanced and promoted the 'claim of right' doctrine to suddenly prepare federal income tax returns with legality and accuracy in mind simply because a limited injunction has prohibited him from promoting one specific anti-tax scheme." (Pl.'s Mem. in Supp. at 12.)  The defendants' failure to stop preparing fraudulent tax returns despite their knowledge of the illegality of their stance, weighs in favor of issuance of an injunction.

Furthermore, despite being preliminarily enjoined on April 2, 2008 from "acting as federal income tax preparers, or preparing or filing federal income tax returns for anyone other than themselves," *Pugh*, 2008 WL 926069, at *3, the Government proffers undisputed evidence that, as of March 4, 2009, Theodore prepared 42 returns and Archie prepared 51 returns with their respective social security or electronic identification numbers identifying them as the preparers in violation of the preliminary injunction entered by this court.  (Dixon Decl. ¶ 6; *see also* A. Pugh Decl. ¶ 10 (admitting that he violated the preliminary injunction entered against him by this court by preparing "normal" tax returns in 2008 and 2009).)  Theodore's violation of this court's preliminary injunction further underscores the need for a permanent injunction barring him from acting as tax return preparer.

Finally, if Theodore continues to act as a tax return preparer, he will have the opportunity to commit future violations.  Although Theodore states that he is currently out of the federal tax return preparation business, he still prepared and signed returns, even after being preliminarily enjoined by this court from acting as a federal tax return preparer.  Theodore's continuing insistence that the "claim of right" scheme is valid under law also presents a strong likelihood that he will commit future violations.

Thus, because the court finds, based on the undisputed record, that a narrow injunction prohibiting only violations of I.R.C. §§ 6694 and 6695 is insufficient to prevent Theodore's interference with the proper administration of the internal revenue laws, the court enjoins Theodore from preparing all federal tax returns pursuant to I.R.C. § 7407.  *See Buddhu*, 2009 WL 1346607, at *4 (imposing a permanent injunction barring defendants from acting as tax return preparers and from providing tax advice to others under I.R.C. § 7407); *Gray*, 2008 WL 907384, at *3-4 (permanently enjoining tax preparer from preparing any tax returns under I.R.C. § 7407 because he had continuously falsified numerous IRS forms and persisted in maintaining the unrealistic position that wages are not income); *see also Webb*, 2007 WL 397041, at *3-4 (finding defendant's deep-seated belief that he and his customers should not have to

pay federal taxes required preliminarily enjoining defendant from acting as a tax return preparer).

## III.   Injunctive Relief under I.R.C. § 7408

The Government also seeks summary judgment and a permanent injunction under I.R.C. § 7408 against both Archie and Theodore Pugh.  (Pl.'s Mem. in Supp. at 13-19.)  I.R.C. § 7408 authorizes a court to enjoin persons from engaging in conduct subject to penalty under, *inter alia*, I.R.C. §§ 6700 and 6701 if the court finds that: (1) the defendant has engaged in conduct subject to penalty under §§ 6700 and 6701; and (2) "injunctive relief is appropriate to prevent recurrence" of the violative conduct.[18]  I.R.C. §§ 7408 (b)-(c); *see also Schulz*, 529 F. Supp. 2d at 346.  Because injunctions are expressly authorized by I.R.C. § 7408, like I.R.C. § 7407, the traditional requirements for equitable relief need not be met.  *Schulz*, 529 F. Supp. 2d at 346; *United States v. Gleason*, 432 F.3d 678, 682 (6th Cir. 2005); *United States v. Conces*, No. 05-CV-739, 2006 WL 1402198, at *2 (W.D. Mich. Apr. 24, 2006) (issuing permanent injunctive relief under I.R.C. § 7408, and expressly declining to consider traditional equitable criteria for injunctive relief).  Based on the unrefuted evidence discussed above, the court finds that defendants have knowingly and repeatedly violated I.R.C. §§ 6700

---

[18] Unlike I.R.C. § 7407, I.R.C. § 7408 more broadly applies to "persons," as opposed to any person who is a "tax return preparer."  *Compare* I.R.C. § 7407 *with* I.R.C. § 7408.  Accordingly, I.R.C. § 7407 is applicable to Archie, regardless of whether is considered a "tax return preparer."

and 6701 and that a permanent injunction is necessary to prevent further violations.

**A. Conduct Subject to Penalty Under I.R.C. § 6700**

I.R.C. § 6700 is "aimed at abusive tax shelters," *Schulz*, 529 F. Supp. 2d at 346, and "penalizes any person who makes statements regarding the tax benefits of an arrangement organized or sold by him which he knows or has reason to know are false or fraudulent as to any material matter." *United States v. Buttorff*, 761 F.2d 1056, 1059-60 (5th Cir. 1985). To establish a violation of I.R.C. § 6700, the Government must prove by a preponderance of the evidence that:

> (1) the defendants organized or sold, or participated in the organization or sale of, an entity, plan, or arrangement; (2) they made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement; (3) they knew or had reason to know that the statements were false or fraudulent; [and](4) the false or fraudulent statements pertained to a material matter . . . .

*Schulz,* 529 F. Supp. 2d at 346-47 (citing *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000); *Gleason*, 432 F.3d at 682). To obtain injunctive relief, the Government must additionally establish that an injunction is necessary to prevent recurrence of the conduct. I.R.C. § 7408(b); *see also Schulz*, 529 F. Supp. 2d at 346. Each element will be addressed separately.

### i. Organization or Sale of an Entity, Plan, or Arrangement

For an injunction to issue, the Government must first establish that defendants participated in the organization or sale of an "abusive tax shelter."  Under I.R.C. § 6700, "'any 'plan or arrangement' having some connection to taxes can serve as a 'tax shelter' and will be an 'abusive' tax shelter if the defendant makes the requisite false or fraudulent statements concerning the tax benefits of participation.'"  *Schulz*, 529 F. Supp. 2d at 346 (quoting *United States v. Raymond*, 228 F.3d 804, 811 (7th Cir. 2000)); *see also United States v. Kaun*, 827 F.2d 1144, 1147-48 (7th Cir. 1987) (holding that the definition of a tax shelter in I.R.C. § 6700 is "clearly broad enough to include a tax protester group").

The undisputed evidence establishes that the Pughs have organized and sold[19] a plan or arrangement constituting an abusive tax shelter in violation of I.R.C. § 6700.  Defendants organized their tax preparation business through word-of-mouth and client referrals.  (*See* Dixon Decl. ¶ 7 ("the Pughs market their business through word of mouth"); Rivera Decl. ¶ 3 (recommended by friend); Trammel Decl. ¶ 3 (referred by

---

[19] It is undisputed that Theodore charged for client participation in the program.  (Williams Decl. ¶ 8; Dixon Decl., Exs. 12, 13.)  Although the Government has failed to proffer evidence that Archie charged a fee for advising his clients about "claim of right" deductions, he is still be liable under I.R.C. § 6700 for organizing the "claim of right" program.  *See Schulz*, 529 F. Supp. 2d at 348 (finding first element of I.R.C. § 6700 satisfied, even though there was there was a question of fact whether defendants sold their materials, where defendants clearly "organized" the materials.)

landlord); Pannell Decl. ¶ 2 (referred by ex-husband); Mobley
Decl. ¶ 3 (referred by family friend); Prentis Decl. ¶ 3 (heard
of business through word-of-mouth); Williams Decl. ¶ 3
(recommended by friend).) Citing to the so-called "claim of
right" doctrine, the Pughs instructed their clients that IRS
taxes were illegal, that their income was not taxable and that
the "claim of right" deductions were legitimate, promised their
customers large refunds by the IRS, and prepared federal income
tax returns based on this frivolous theory. (Mobley Decl. ¶ 4;
Prentis Decl. ¶ 4; Pannell Decl. ¶ 5; Rivera Decl. ¶ 6; Williams
Decl. ¶¶ 4-5.) Archie informed his clients that he had a form
that would resolve the customer's tax issues (Pannell Decl.
¶ 5), and Theodore informed his clients that he would provide
documentation to the IRS explaining the deduction. (Williams
Decl. ¶ 9; Mobley Decl. ¶ 6.) Therefore, the Pughs'
organization and sale of the "claim of right" program
constitutes a "plan or arrangement" within the meaning of
§ 6700. *See Schulz*, 529 F. Supp. 2d at 348 (finding that
defendants, who offered materials instructing taxpayers that
federal income tax is unconstitutional, "organized a plan or
arrangement concerning the avoidance of taxes," which
constituted an abusive tax shelter); *see also Raymond*, 228 F.3d
at 806-07, 811 (finding that defendants' program, which
instructed taxpayers that the federal government had no

authority to tax them on their income and how to refuse to pay federal income tax, was a tax shelter and qualified as a plan within the meaning of I.R.C. § 6700); *Cohen*, 2005 WL 1491978, at *4 (stating "the organization or participation in a tax protester scheme or group, which is based on false or fraudulent conceptions of the U.S. Tax Code, will suffice" to violate I.R.C. § 6700).

## ii. False or Fraudulent Statements Concerning the Tax Benefits of the Plan

The second element under I.R.C § 6700 requires that defendants made or caused to be made, false or fraudulent statements concerning the tax benefits to be derived from the entity, plan, or arrangement. *Schulz*, 529 F. Supp. 2d at 348. "Two types of statements fall within the statutory bar: statements directly addressing the availability of tax benefits and those concerning factual matters that are relevant to the availability of tax benefits." *Id.* (quoting *United States v. Campbell*, 897 F.2d 1317, 1320 (5th Cir. 1990)).

Here, the Pughs made false or fraudulent statements concerning the tax benefits of the "claim of right" doctrine. These false statements include telling customers that they are entitled to take a "claim of right" deduction on their federal income tax returns in the amount of compensation earned from personal services or labor based on I.R.C. § 1341, that filing

returns with the "claim of right" deduction would result in large refunds, that such claims are legal and that the defendants had won cases on this issue in court. (Dixon Decl. ¶ 8 & Ex. 12; Rivera Decl. ¶ 6; Williams Decl. ¶¶ 4, 5; Prentis ¶¶ 4, 6; Pannell ¶ 5.) As detailed, *supra*, the Pughs' purported reliance on I.R.C. § 1341 is groundless, and the "claim of right" program is annually reported on the IRS's consumer alert of tax scams that taxpayers are urged to avoid. As these statements are false statements of fact which clearly concern the tax benefits to be derived from participating in the defendants' "claim of right" program, the second element is met. *See Schulz*, 529 F. Supp. 2d at 349-50 (finding that defendants' statements that the income tax is unconstitutional and that the IRS is prohibited from compelling people to sign and file income tax returns were false statements of fact concerning the tax benefits to be derived from their plan); *see also Raymond*, 228 F.3d at 812 (finding that defendant's statements that payment of income tax is voluntary, in conjunction with the sale of defendant's program, "operated as false assurances that refusing to pay taxes in accordance with the Program's instructions is a lawful activity").

### iii. Defendants Knew or Had Reason to Know that the Statements Were False or Fraudulent

The third element of I.R.C. § 6700 requires that defendants know or have reason to know that the statements were false or fraudulent. This element is based on "what a reasonable person in the defendant's subjective position would have discovered." *Schulz*, 529 F. Supp. 2d at 350 (quoting *Estate Pres. Servs.*, 202 F.3d at 1103) (internal quotation marks omitted). "The following factors are relevant in determining whether a defendant had the requisite scienter to violate I.R.C. § 6700: (1) the extent of the defendants' reliance upon knowledgeable professionals; (2) the defendants' level of sophistication and education; and (3) the defendants' familiarity with tax matters." *Id.* (citing *Estate Pres. Servs.*, 202 F.3d at 1103).

Here, defendants knew or had reason to know that the statements concerning the tax benefits of the "claim of right" doctrine were false or fraudulent. As discussed extensively, *supra*, "the average citizen knows that the payment of income taxes is legally required," *Schiff*, 919 F.2d at 834, and, as courts and the IRS have repeatedly rejected arguments to the contrary, any amount of research would have revealed the falsity of defendants' claims. Defendants, who held themselves out as experienced professional tax preparers and collectively prepared

at least 680 federal income tax between the years 2001 and 2004
alone (Dixon Decl. ¶ 6; Defs.' 56.1 Stmt ¶ 2; A. Pugh Decl.
¶¶ 2, 4), should have known that their representations regarding
the tax benefit of the "claim of right" doctrine were false
because there is no statute, regulation, or case law which
supports their position, and any investigation would have
revealed as much. *Venie*, 691 F. Supp. at 839 (a defendant
holding himself out to the public as a tax return preparer is
"presumed to be familiar with the Internal Revenue Code as well
as the regulations and case law regarding the Code."). Lastly,
the defendants' blatant attempts to conceal their participation
in the scheme, such as their repeated failure to sign returns
they had prepared with "claim of right" deductions, indicate
that they were actually aware that the statements they were
making were false. Thus, the defendants' level of
sophistication, their familiarity with tax matters, and
defendants' own behavior supports a finding that they actually
knew, and certainly should have known of the falsity of the
statements concerning the so-called "claim of right" doctrine.
*See Schulz*, 529 F. Supp. 2d at 350 (finding that defendants had
significant experience with the relevant tax-related issues and
further that "the obligation to pay taxes is common knowledge");
*Raymond*, 228 F.3d at 812 (finding that defendants, one of whom
was a law school graduate, should have reasonably been aware

that "their personal belief that paying taxes is a voluntary activity does not represent the current state of the law").

### iv. False or Fraudulent Statements Pertained to a Material Matter

Fourth, defendants' false or fraudulent statements must pertain to a material matter to incur liability under § 6700. "'Material matters are those which would have a substantial impact on the decision-making process of a reasonably prudent investor and include matters relevant to the availability of a tax benefit.'" *Schulz*, 529 F. Supp. 2d. at 351-52 (quoting *Campbell*, 897 F.2d at 1320).

Statements that pertain to the reduction of tax liability are material within the meaning of I.R.C. § 6700. *See United States v. Benson*, 561 F.3d 718, 724 (7th Cir. 2009) ("There is no matter more material to the sale of a tax avoidance package than whether the package effectively allows customers to avoid taxes."); *United States v. Harkins*, 355 F. Supp. 2d 1175, 1180 (D. Or. 2004) (finding statements which related directly to the exclusion of income from federal taxation to be material under I.R.C. § 6700); *United States v. Estate Pres. Servs.*, 38 F. Supp. 2d 846, 855 (E.D. Cal. 1998), *aff'd*, 202 F.3d 1093 (9th Cir. 2000) (finding that statements pertaining to the availability of tax deductions, credits or

other mechanisms of tax reduction are material within the meaning of § 6700).

Here, defendants falsely told their customers that they had a constitutional and statutory right to avoid paying income tax, and that it was permissible to deduct the amount received as wages from their adjusted gross income. (Dixon Decl. ¶ 8 & Ex. 12; Rivera Decl. ¶ 6; Williams Decl. ¶¶ 4, 5; Prentis ¶¶ 4, 6; Pannell ¶ 5.) As these false and fraudulent statements directly relate to the availability of tax deductions, they pertain to a material matter. Further, such statements would affect a reasonable person's decision making process. Thus, defendants' statements regarding the "claim of right" doctrine were material. *See Schulz*, 529 F. Supp. 2d. at 351-52 (finding statements that workers can legally stop paying the income tax were clearly relevant to the tax benefit and, thus, material).[20]

Although liability under I.R.C. § 6700 provides sufficient grounds for an injunction against Archie and Theodore Pugh, the court will also consider plaintiff's request for an injunction on the ground that the defendants engaged in conduct subject to penalty pursuant to I.R.C. § 6701.

---

[20] The final factor – the need to prevent future violations – will be discussed, *infra*, in conjunction with I.R.C. § 6701, in the context of I.R.C. § 7407.

## B. Conduct Subject to Penalty Under I.R.C. § 6701

I.R.C. § 6701 imposes a penalty upon any person who:

(1) aids or assists in, procures, or advises with
respect to, the preparation . . . of any portion
of a return . . ., (2) . . . knows (or has reason
to believe) that such portion will be used in
connection with any material matter arising under
the internal revenue laws, and (3) . . . knows
that such portion (if so used) would result in an
understatement of the liability for tax of
another person.

I.R.C. § 6701(a); *see also Webb*, 2007 WL 397041, at *4; *Buddhu*,

2009 WL 1346607, at *5.  To obtain injunctive relief, the

Government must additionally establish that an injunction is

necessary to prevent recurrence of the conduct.  I.R.C.

§ 7408(b); *United States v. Kotmair*, No. 05-CV-1297, 2006 WL

4846388, at *6 (D. Md. Nov. 29, 2006), *aff'd*, 234 Fed. Appx. 65

(4th Cir. 2007).

As previously discussed, as part of the "claim of

right" program, defendants advised customers to take improper

deductions and prepared, advised or assisted in filing false or

fraudulent income tax returns.  (A. Pugh Decl. ¶ 9; T. Pugh

Decl. 22-23; Prentis Decl. ¶¶ 4, 6; Pannell Decl. ¶ 5; Rivera

Decl. ¶ 6; Williams Decl. ¶¶ 4-5.)  The court has already

determined that, as professional income tax return preparers,

the Pughs had enough experience with the tax system to know or

have reason to know that their advice about the "claim of right"

program and their preparation of tax returns claiming fraudulent

"claim of right" deductions would be used in connection with a material matter arising under the internal revenue laws and would result in an understatement of their customers' tax liabilities. As such, defendants' conduct is subject to penalty under I.R.C. § 6701, and therefore further grounds exist for an injunction under I.R.C. § 7408.

### C. Injunctive Relief under §§ 7408

I.R.C. § 7408 authorizes courts to enjoin a person from engaging in conduct subject to penalty under I.R.C. §§ 6700 and 6701 if injunctive relief is necessary to prevent recurrence of such conduct. I.R.C. § 7408(b) & (c)(1). Courts consider several factors to determine the probability of recurrence and, thus, the need for an injunction:

> (1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that defendant's occupation would place him in a position where future violations could be anticipated.

*Schulz*, 529 F. Supp. 2d at 352 (quoting *Estate Pres. Servs.*, 202 F.3d at 1105); *see also Raymond*, 228 F.3d at 813; *Benson*, 561 F.3d at 724. All of these factors weigh in favor of granting a permanent injunction under I.R.C. § 7408.

First, the gravity of the harm caused by the offense is serious. The United States Treasury has been harmed both by lost revenue and by the expense of investigating defendants' tax preparation services and identifying, auditing, and collecting taxes the defendants have assisted their customers in evading. (Henline Decl. ¶¶ 6, 8, 13-15; Dixon Decl. ¶ 15.) Further, the defendants' clients were harmed because many of them were forced to pay back their deficiencies, in addition to penalties, interest, and fees, because of the defendants' activities. (*See, e.g.*, Williams Decl. ¶ 11; Prentis Decl. ¶ 7; Trammel Decl. ¶¶ 5-6; Mobley Decl. ¶¶ 5-8; Rivera Decl. ¶ 8.)

With regard to the extent of the defendants' participation and the isolated or recurrent nature of the violations, the Government has presented undisputed evidence that the defendants have prepared at least 79 returns claiming deductions on the basis of the "claim of right" doctrine between 1998 and 2005, that the Pughs misused several IRS forms in order to do so, and took steps to conceal their association with these forms.

Defendants' degree of scienter and their non-recognition of their own culpability also support the issuance of an injunction. As discussed earlier, the defendants had reason to know that their activities were illegal, but have never renounced the "claim of right" doctrine. Instead, they

continue to contend in their submissions that the doctrine is supported by statute and the Constitution after encouraging their clients to fight and mislead the IRS, all while attempting to disassociate themselves from the preparation of these returns. (Defs.' 56.1 Stmt ¶ 3; T. Pugh Decl. ¶¶ 14, 16-17, 19, 21-22; A. Pugh Decl. ¶ 9; Dixon Decl. ¶ 8.)

Lastly, defendants' occupations place them in a position where future violations are likely. As federal income tax preparers, defendants can easily continue to violate the Internal Revenue Code by promoting the "claim of right" doctrine, or another fraudulent scheme. Indeed, the Pughs have heretofore shown resistance to following the law, by violating the preliminary injunction prohibiting them from acting as federal tax return preparers. (Dixon Decl. ¶ 6 & n.1; A. Pugh Decl. ¶ 10.) Thus, a permanent injunction is necessary to prevent recurrence of the conduct proscribed by I.R.C. §§ 6700 and 6701. *See Buddhu*, 2009 WL 1346607, at *5 (finding a permanent injunction under I.R.C. § 7408 was necessary "to prevent [defendants] from engaging in such conduct in the future" where defendants "knowingly inflated and fabricated deductions on their customers' federal income tax returns"); *Raymond*, 228 F.3d at 814 (affirming the district court's issuance of permanent injunction under I.R.C. § 7408 even though appellants claimed they would not engage in unlawful activity in

the future where, *inter alia*, appellants "consistently held to

their view that federal tax laws are unconstitutional and that

the government has no authority to compel the payment of federal

taxes"); *see also Webb*, 2007 WL 397041, at *4 (finding a

preliminary injunction under I.R.C. § 7408 was appropriate where

"defendant knowingly prepared and filed tax returns for

customers in which he knowingly and falsely underreported their

income").

## IV.    Injunctive Relief under I.R.C. § 7402(a)

The Government also seeks summary judgment and a

permanent injunction under I.R.C. § 7402(a) specifically

enjoining the Pughs from acting as federal income tax preparers.

(Pl.'s Mem. in Supp. at 19-25.)  I.R.C. § 7402(a)[21] is

essentially a catch-all provision, which allows a court to issue

injunctions "as may be necessary or appropriate for the

enforcement of the internal revenue laws."  I.R.C. § 7402(a);

*see Webb*, 2007 WL 397041, at *5.  I.R.C. § 7402(a) is available

"even if the United States has other remedies available for

_____

[21] I.R.C. § 7402(a) provides, in relevant part:

> The district courts of the United States at the instance of the
> United States shall have . . . jurisdiction to make and issue in
> civil actions, writs and orders of injunction . . . and to render
> such judgments and decrees as may be necessary or appropriate for
> the enforcement of the internal revenue laws.  The remedies
> hereby provided are in addition to and not exclusive of any and
> all other remedies of the United States in such courts or
> otherwise to enforce such laws.

I.R.C. § 7402(a).

enforcing the internal revenue laws," *Buddhu*, 2009 WL 1346607,
at *5, and "has been used to enjoin interference with tax
enforcement even when such interference does not violate any
particular tax statute." *United States v. Ernst & Whinney*, 735
F.2d 1296, 1300 (11th Cir. 1984); *see also Benson*, 561 F.3d at
727 n.4 (stating that I.R.C. § 7402(a) "makes clear that the
remedies it provides 'are in addition to and not exclusive of
any and all other remedies of the United States in such courts
or otherwise to enforce' the tax laws") (quoting I.R.C.
§ 7402(a)).

Courts have held that "the language of § 7402(a)
encompasses a broad range of powers necessary to compel
compliance with the tax laws," and have relied on the statute
"to enjoin activities of third parties that encourage taxpayers
to make fraudulent claims." *Ernst & Whinney*, 735 F.2d at 1300;
*see United States v. Kaun*, 633 F. Supp. 406, 409 (E.D. Wis.
1986), *aff'd*, 827 F.2d 1144 (7th Cir. 1987) ("Consistent with
[the] broad, remedial purpose of § 7402(a), federal courts have
routinely relied on its grant of injunctive authority to
preclude individuals . . . from disseminating their rather
perverse notions about compliance with the Internal Revenue laws
or from promoting certain tax avoidance schemes."). The power
to permanently enjoin defendants from acting as federal tax
preparers falls within the authority granted to this court under

I.R.C. § 7402(a). *See, e.g.*, *Buddhu*, 2009 WL 1346607, at *5
(permanently enjoining defendants under I.R.C. § 7402(a) from
preparing income tax returns); *see also Ernst & Whinney*, 735
F.2d at 1300 ("§ 7402(a) does give the district court the power
to enjoin [defendant's] activities as a tax adviser.");
*Broccolo*, 2006 WL 3690648, at *7 (noting that I.R.C. § 7402(a)
"applied broadly can support an injunction prohibiting
[defendant] from preparing even legitimate income tax returns"
and preliminarily enjoining defendants under I.R.C. § 7402(a)
from preparing income tax returns.)

## A. Conduct Which Substantially Interferes with the Proper Administration of the Internal Revenue Laws

The court finds that the Pughs have engaged in conduct
subject to injunction under I.R.C. § 7402(a). There is no
genuine issue of material fact that the defendants have
interfered with the administration and enforcement of the
internal revenue laws by promoting their "claim of right"
program and filing frivolous tax returns on behalf of their
customers, which understate their customers' income tax
liabilities and fraudulently claim significant tax refunds,
amounting to at least $500,000. The Pughs then attempt to
distance themselves from their enjoinable conduct by having
their customers sign the returns and either leave blank the paid
preparer signature block or type "self-prepared" on the returns.
This conduct defrauds the United States Treasury, undermines the

integrity of the federal tax system and causes the expenditure
of Treasury resources to investigate and collect taxes owed.

**B. Injunctive Relief under I.R.C. § 7402(a)**

The court finds that permanent injunctive relief under
I.R.C. § 7402(a) is appropriate to prevent both Theodore and
Archie Pugh from continuing to interfere with the administration
and enforcement of the internal revenue laws.

Courts outside the Second Circuit have noted that, as
in cases arising under I.R.C. §§ 7407 and 7408, the United
States need not make a showing of irreparable harm and lack of a
legal remedy in order for an injunction to issue under I.R.C.
§ 7402(a). *See, e.g.*, *United States v. Stoll*, No. Civ. C05-
0262RSM, 2005 WL 1763617, at *8 (W.D. Wash. June 27, 2005)
("Because I.R.C. §§ 7402(a) and 7408 set forth the criteria for
injunctive relief, the United States need only meet those
criteria, without reference to the traditional equitable
factors, for a court to issue a permanent injunction under these
sections."); *United States v. Rivera*, No. 03-CV-2520GHK, 2003 WL
22429482, at *8 (C.D. Cal. July 18, 2003) ("Because § 7402(a)
explicitly provides that the injunction remedy is 'in addition
to and not exclusive of' other remedies for enforcing the
internal revenue laws, the United States need not establish that
it has no adequate remedy at law for an injunction under
§ 7402(a).").

Some courts, including district courts in the Second Circuit, have applied traditional equity considerations when determining whether injunctive relief pursuant to I.R.C. § 7402(a) is appropriate because I.R.C. § 7402(a) does not grant specific injunctive relief. *See, e.g.*, *Buddhu*, 2009 WL 1346607, at *3 ("Section 7402(a) authorizes injunctive relief, but does not provide 'statutory conditions.' Accordingly, the traditional equitable considerations must be applied."); *Webb*, 2007 WL 397041, at *5 (stating, in context of a preliminary injunction, that the courts have applied "traditional equity considerations," including the requirement that the Government establish irreparable harm, when crafting relief pursuant to I.R.C. § 7402(a)); *Broccolo*, 2006 WL 3690648, at *2 (same); *accord City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966, 2009 WL 2612345, at *40 (E.D.N.Y. Aug. 25, 2009) (noting that district courts in the Second Circuit have required proof of traditional equity factors in suits for injunction brought pursuant to I.R.C. § 7402(a)); *see also Ernst & Whinney*, 735 F.2d at 1301 ("[T]he decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the district court's use of the equitable remedy."); *Kotmair*, 2006 WL 4846388, at *7 ("Unlike an injunction under § 7408, before an injunction can issue under § 7402, the government must establish

the presence of the traditional equitable factors for the

issuance of an injunction.").

In the Second Circuit, before a permanent injunction

will issue, "a plaintiff must succeed on the merits . . .,"

*Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006), and establish:

> (1) that it has suffered an irreparable injury; (2) that
> remedies available at law, such as monetary damages, are
> inadequate to compensate for that injury; (3) that,
> considering the balance of hardships between the plaintiff
> and the defendant, a remedy in equity is warranted; and (4)
> that the public interest would not be disserved by a
> permanent injunction.

*Salinger v. Colting*, --- F.3d ----, No. 09-CV-2878, 2010 WL

1729126, at *7 (2d Cir. Apr. 30, 2010) (quoting *eBay Inc. v.*

*MercExchange, LLC*, 547 U.S. 388, 391 (2006)); *see also NRG*

*Energy, Inc. v. Exelon Corp.*, 646 F. Supp. 2d 431, 448 (S.D.N.Y.

2009) (same); *Buddhu*, 2009 WL 1346607, at *5 (discussing

permanent injunction under I.R.C. §7402(a) and noting the

"standard for granting a permanent injunction is the same as

that for a preliminary injunction, except that the moving party

must demonstrate actual, rather than likely, success on the

merits of its claim").  Applying the Second Circuit standard to

the undisputed facts of this case, the court concludes that the

Government has made the requisite showing for a permanent

injunction to issue under I.R.C. § 7402(a).

First, the Government has shown success on the merits.

It has established that the defendants are violating and

interfering with the administration of the Internal Revenue Code by advising clients about, and preparing tax returns containing, "claim of right" deductions, and specifically, has established that the Pughs have engaged in conduct subject to penalty under I.R.C. §§ 6700 and 6701, and subject to a permanent injunction under I.R.C. § 7408, and that Theodore Pugh has engaged in conduct subject to penalty under I.R.C. §§ 6694 and 6695, and subject to a permanent injunction under I.R.C. § 7407. The Government has further demonstrated that many of the tax returns prepared by the Pughs are fraudulent on their face, that the defendants' tax-fraud scheme has been thoroughly discredited, that the Pughs have actively concealed their association with the fraudulent returns, and that Theodore has encouraged his clients to contest the IRS on frivolous grounds.

Second, the undisputed evidence demonstrates that the Government has suffered, and will continue to suffer, irreparable harm if a permanent injunction is not issued. The Government has already lost, and will continue to lose, substantial revenue from the tax returns filed by the Pughs understating their customers' tax liability, as well as from the expenditure of time and resources investigating the Pughs' tax-fraud scheme, which was made even more difficult by the defendants' attempts to conceal their fraudulent activity. (Dixon Decl. ¶ 15 (stating that the Pughs deducted over $3.8

million in wage income from the taxpayers' adjusted gross income and claimed over $500,000 in tax refunds on the basis of the "claim of right" scheme).) Further, the defendants' customers, who relied upon defendants' advice, had improper tax returns prepared in their name, did not pay their proper federal income taxes, and were liable for underpaid taxes, penalties, and interest. (*See, e.g.*, Williams Decl. ¶ 11; Prentis Decl. ¶ 7; Trammel Decl. ¶¶ 5-6; Mobley Decl. ¶¶ 5-8; Rivera Decl. ¶ 8.) Thus, permanently enjoining the defendants will prevent the Government, as well as the defendants' customers, from suffering irreparable harm.

Third, the Government has shown that remedies available at law are inadequate to compensate for that injury. Given the Pughs' proven conduct of evasion and obfuscation regarding the fraudulent tax returns, the only way to prevent future harm to the Government and defendants' customers caused by the fraudulent "claim of right" program is to enjoin the Pughs permanently from preparing tax returns.

Fourth, the balance of hardships weighs in favor of the Government. Although the Pughs will be denied the right to earn a livelihood preparing federal income tax returns, they have never enjoyed a right to profit from illegal conduct, and the harm to them is substantially outweighed by the harm that has been and will continue to be suffered by the Government and

the Pughs' customers as a result of the fraudulent tax returns with which the Pughs have been or may become involved.

Finally, the undisputed evidence demonstrates that the public interest will be served by a permanent injunction. The defendants' activities undermine public confidence in the fairness of the federal tax system and advise, encourage and cause violations of the internal revenue laws. The "public has a compelling interest in prohibiting the promotion and sale of products that aid some in avoiding lawful income taxes," *Kotmair*, 2006 WL 4846388, at *8, and a permanent injunction will prevent taxpayers from having inaccurate, frivolous or fraudulent returns filed in their name that would subject them to liability for overdue taxes, penalties and interest.

Injunctive relief under I.R.C. § 7402 is therefore necessary and appropriate to prevent the defendants from continuing to interfere with the Internal Revenue laws. Accordingly, pursuant to I.R.C. § 7402(a), the court permanently enjoins Archie and Theodore Pugh from acting as tax return preparers. *See Buddhu*, 2009 WL 1346607, at *5 (granting a permanent injunction under I.R.C. § 7402(a) and finding that, although the permanent injunction denies defendants the right to earn a livelihood preparing income tax returns, "the harm to them is substantially outweighed by the harm to which their clients are subjected by having fraudulent tax returns prepared

in their names"); *Kotmair*, 2006 WL 4846388, at *7-8 (finding the traditional equitable factors for the issuance of a permanent injunction met and issuing an injunction under § 7402(a)); *Harkins*, 355 F. Supp. 2d at 1181 (considering equitable factors and granting permanent injunction under I.R.C. § 7402(a)); *Lloyd*, 2005 WL 3307281, at *7-8 (same); *see also Broccolo*, 2006 WL 3690648, at *6-7 (applying traditional equity considerations and preliminarily enjoining defendants under I.R.C. § 7402(a) from preparing income tax returns).

## CONCLUSION

Based on the undisputed evidence and for the foregoing reasons, the Government's motion for summary judgment is granted and the defendants will be permanently enjoined pursuant to I.R.C. §§ 7402(a), 7407, and 7408, in accordance with the terms of the Order of Permanent Injunction, dated June 1, 2010, which is being filed concurrently with this Memorandum & Order.  The Clerk of the Court is respectfully requested to enter judgment accordingly.

The court will retain jurisdiction to ensure compliance with the court's Order of Permanent Injunction.

**SO ORDERED.**

Dated: June 1, 2010
        Brooklyn, New York

_____ /s/_____ _
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York